DEERSKIN TRADING POST, INC., on behalf of itself and all others similarly situated, Plaintiffs and Counterclaim Defendant,

v.

UNITED PARCEL SERVICE OF AMERICA, INC., Defendant and counterclaim Plaintiff.

Civil Action No. 1:96–CV–1346–FMH.

United States District Court,
N.D. Georgia,
Atlantic Division.

Jan. 29, 1997.

Martin D. Chitwood, Craig Gordon Harley, Appel, Chitwood & Harley, Atlanta, GA, David J. Bershad, Jerome M. Congress, Joseph Opper, Milberg, Weiss, Bersh, Hynes & Lerach, New York City, for Plaintiffs.

Paul J. Murphy, Michael S. French, David L. Pardue, Hunton & Williams, Atlanta, GA, for Defendant.

## ORDER

HULL, District Judge.

Plaintiff Deerskin Trading Post, Inc. brings this action against Defendant United Parcel Service of America ("UPS") alleging, *inter alia,* that Defendant UPS overcharged Plaintiff for shipping services. This matter is before the Court on Defendant's Motion to Dismiss [12–1] counts two, three, four, five, and six of Plaintiff's Complaint and portions of count one of Plaintiff's Complaint. Plaintiff's Complaint alleges numerous causes of action under state law which Defendant's Motion asserts are preempted by federal law and should be dismissed.

## I. FACTS

Defendant UPS and its subsidiaries transport parcels by air and ground throughout the United States and the world. Plaintiff alleges that Defendant overcharged Plaintiff for Defendant's services in shipping packages to Plaintiff's customers. Specifically, Plaintiff claims that Defendant inappropriately charged Plaintiff based on the "dimensional weight" of certain packages. Ordinarily, the rate a customer pays is determined by the actual weight of the package, the destination of the package, and the desired speed of

delivery. In certain circumstances, however, Defendant's rate is based upon the "dimensional weight" as defined in Defendant's regulations. Defendant's rate typically is based on the dimensional weight of the package only when the package is greater than one cubic foot in volume and when the package's dimensional weight exceeds its actual weight. All of Defendant's rates, however, are governed by Defendant's contracts with its customers.

Under Plaintiff's contract, Defendant, in line with its normal practice, is permitted to charge Plaintiff based on the dimensional weight of a package only if the package exceeds one cubic foot in volume. Plaintiff alleges, however, that Defendant charged Plaintiff based on the dimensional weight of packages that were less than one cubic foot in volume. As Plaintiff puts it, "Defendant ... systematically imposed improper 'dimensional weight' charges on packages [UPS] ... contracted to ship." Plain. Brief, at 2.

On May 29, 1996, Plaintiff brought this action alleging breach of contract, statutory fraud, common law fraud, negligence, gross negligence, unjust enrichment and imposition of constructive trust. On September 9, 1996, Defendant filed a Motion to Dismiss all of Plaintiff's claims except a limited portion of Plaintiffs breach of contract claim. According to Defendant, the relevant sections of the Federal Aviation Administration Authorization Act of 1994, namely 49 U.S.C. §§ 14501(c)(1) and 41713(a), (b)(4), preempt all of Plaintiff's state law claims except for a portion of Plaintiff's breach of contract claim. Defendant admits that Plaintiff's breach of contract claim is not preempted by federal law, but Defendant contends that Plaintiff cannot obtain any punitive damages or injunctive relief on its breach of contract claim.

## II. *DISCUSSION*

A. *Legislative History Of The Federal Aviation Administration Authorization Act*

In 1994, Congress passed the Federal Aviation Administration Authorization Act

1. When Congress enacted the Interstate Commerce Commission Termination Act of 1995, § 11501(h)(1) was recodified as new

("FAAAA"), effective on January 1, 1995. As part of the FAAAA, Congress enacted (1) the predecessor to § 14501(c)(1) (which was codified at 49 U.S.C. § 11501(h)(1))[1] and (2) § 41713(b)(4). Sections 14501(c)(1) and 41713(b)(4) are preemption statutes which remove the states' regulatory power over motor and intermodal carriers, such as Defendant.

1. *The Words of the Federal Statutes Imply a Broad Preemptive Scope*

In construing a federal statute, the Court is compelled to effectuate Congress's intentions in enacting the statute. *FMC Corp. v. Holliday*, 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The Court's analysis begins, and usually ends, with the language of the statute. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). The Court proceeds with "the assumption that the ordinary meaning of [the words employed in the statute] accurately expresses the legislative purpose." *Holliday*, 498 U.S. at 57, 111 S.Ct. at 407 (internal quotation marks omitted).

Section 14501(c)(1) provides that no state shall enact or enforce any law, regulation, or any other provision having the force and effect of law related to a price, route, or service of any motor carrier, as follows:

**(c) Motor carriers of property.—**

**(1) General rule.**—Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more states may not enact or enforce a law, regulation, or other provision having the force and effect of *law related to* a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis supplied). Similarly, § 41713(b)(4) provides that no state shall enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier, as follows:

§ 14501(c)(1). Pub.L. No. 104–88, § 103, 109 Stat. 802, 899 (effective Jan. 1, 1996).

**(4) Transportation by air carrier or carrier affiliated with a direct air carrier.—**

**(A) General rule.**—Except as provided in subparagraph (B), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or service of an air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

49 U.S.C. § 41713(b)(4)(A) (emphasis supplied).

■ The operative phrase in the above statutes is "related to." "The ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992) (quoting BLACK'S LAW DICTIONARY 1158 (5th ed.1979)). The words "thus express a broad pre-emptive purpose." *Id.*

The United States Supreme Court repeatedly has recognized that a similarly worded preemption provision in the Employee Retirement Income Security Act ("ERISA")—which preempts all state laws insofar as they *relate to* any employee benefit plan—has a broad scope. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985). The Supreme Court has stated that the "breadth of [that provision's] preemptive reach is apparent from [its] language," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983); and that it has an "expansive sweep." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). Further, the Supreme Court has stated that the provision is "deliberately expansive," *id.* at 46, 107 S.Ct. at 1552, and "conspicuous for its breadth." *Holliday*, 498 U.S. at 58, 111 S.Ct. at 407. Consequently, the Supreme Court has held that a state law "relates to" an employee benefit plan, and is preempted by ERISA, "if it has a connection with, or reference to, such a plan." *Morales*, 504 U.S. at 384, 112 S.Ct. at 2037 (citing *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900).

The Supreme Court adopted the same standard in determining the scope of the preemption provision contained in the Airline Deregulation Act ("ADA")—which preempts any state law, regulation, or provision having the force and effect of law *related to* the prices, routes, or services of any airline—and held that "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under the ADA's preemption provision." *Morales*, 504 U.S. at 384, 112 S.Ct. at 2037.

■ Considering the analysis motivating the Supreme Court's holdings regarding the preemption provisions of ERISA and the ADA, the Court finds that Congress intended for the preemption provision of the FAAAA—which employs identical language to the preemption provision of the ADA—to be broad in scope and that the FAAAA's preemption provision precludes any state enforcement action having a connection with or reference to any price, route, or service of any motor carrier, motor private carrier, or air carrier.

2. *Congress Intended for the Preemptive Scope of the FAAAA to be Identical to the Preemptive Scope of the Airline Deregulation Act*

Further, the language Congress chose in drafting the preemption provisions of the FAAAA shows that Congress intended for the preemption provisions of the FAAAA to be applied in an identical manner as the preemption provision of the ADA. *Accord Vieira v. United Parcel Service, Inc.*, No. C–95–04697, 1996 WL 478686, at *1 (N.D.Cal. Aug.5, 1996). The preemption provision of the ADA, which is placed in the same section as one of the preemption provisions of the FAAAA, provides that a state may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier, as follows:

**(b) Preemption.**—(1) Except as provided in this subsection, a State, political sub-

division of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).[2] This is the exact language Congress used in drafting the preemption provisions of the FAAAA.

In addition, the House Conference Report on the preemption provisions of the FAAAA explains that the preemption provision concerning motor carriers, § 14501(c)(1), "is identical to the preemption provision deregulating air carriers ... and is intended to function in the exact same manner with respect to its preemptive effects." H.R. Conf. Rep. No. 103–677, 103rd Cong., 2d Sess. 85 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1757. Similarly, the Conference Report explains that the preemption provision governing intermodal air/ground carriers, § 41713(b)(4), was intended to preempt state regulation for the covered carriers "in an identical manner to the preemption provision passed in 1978 contained in" the ADA. *Id,* at 82–83.

Finally, Congress apparently modeled the preemption provisions of the FAAAA after the preemption provision of the ADA with full knowledge of the broad interpretation the Supreme Court had given, and continues to give, the preemption provision of the ADA. The House Conference Report states that "the conferees do not intend to alter the broad interpretation adopted by the United States Supreme Court in *Morales v. Trans World Airlines.*" H.R. Conf. Rep. No. 103–677, 103rd Cong., 2d Sess. 83 (1994), *reprint-*ed in 1994 U.S.C.C.A.N. 1715, 1755. The statements in the House Conference Report and the use of identical language show that Congress intended that the preemption provisions of the FAAAA have identical preemptive effect as the preemption provisions of the ADA.

As the Court noted earlier, the Supreme Court has stated that "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted under the ADA's preemption provision." *Morales,* 504 U.S. at 384, 112 S.Ct. at 2037. The question next becomes: What state enforcement actions are considered to have a connection with or reference to airline "rates, routes, or services" for purposes of the ADA's preemption provision. In answering this question, the Court inevitably answers the question: What state enforcement actions are considered to have a connection with or reference to the price, route, or service of any motor carrier, motor private carrier, or air carrier for purposes of the preemption provisions of the FAAAA? Because there is no Supreme Court case law and no Circuit case law interpreting the preemption provisions of the FAAAA, the Court is guided by cases interpreting the preemption provision of the ADA.[3]

B. *Cases Construing The Airline Deregulation Act*

To date, the Supreme Court has decided only two cases concerning the preemption provision of the ADA: *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), and *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115

---

2. In July 1994, Congress amended the language of the preemption provision of the ADA. Prior to the amendment, the language of the preemption section provided that no state could "enact or enforce any law, *rule,* regulation, *standard,* or other provision having the force of law *relating* to rates, routes, or services of any air carrier." 49 U.S.C. § 1305(a)(1) (1994) (emphasis supplied). However, while Congress modified the language of the provision, Congress intended the amendment to be "without substantive change." *See* Pub.L. 103–272, § 1(a), 108 Stat. 745; *see also American Airlines, Inc. v. Wolens,* 513 U.S. 219, 223 n. 1, 115 S.Ct. 817, 821 n. 1, 130 L.Ed.2d 715 (1995).

3. Most of Defendant's arguments regarding the scope of the preemption provision of the FAAAA are based on cases construing the preemption provision of the ADA. While Plaintiff states in a footnote that it does not accept Defendant's premise that the ADA cases should guide the Court's interpretation of the FAAAA's preemption provision, Plaintiff offers no argument to the contrary. Rather, Plaintiff argues only that even under the cases interpreting the ADA's preemption provision, the Court should permit Plaintiff's claims to proceed.

S.Ct. 817, 130 L.Ed.2d 715 (1995). In *Morales*, the Supreme Court determined that Congress intended the preemption provision of the ADA to be broad in scope, and held that the preemption provision precluded the National Association of Attorneys General ("NAAG") from enforcing guidelines adopted by the NAAG to, among other things, regulate fare advertising. *Morales*, 504 U.S. at 391, 112 S.Ct. at 2040–41. In reaching its conclusion that the regulations on fare advertising "relates to" airline rates, the Supreme Court noted that in at least one state, violations of the NAAG regulations would give consumers a cause of action for an airline's failure to provide an authorized fare—effectively creating a state-enforceable right to that fare in certain circumstances. The Supreme Court analogized this potential scenario to an earlier Supreme Court case, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), where the Supreme Court held that a "common-law tort and contract action seeking damages for the failure of an employee benefit plan to pay benefits 'relate[d] to' employee benefit plans and was pre-empted by ERISA." *Morales*, 504 U.S. at 388, 112 S.Ct. at 2039 (citing *Pilot Life*, 481 U.S. at 43–44, 47–48, 107 S.Ct. at 1550–51, 1552–53).[4]

The Supreme Court next addressed the preemption provision of the ADA in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In *Wolens*, the plaintiffs alleged that American Airlines's retroactive modification of terms of its frequent flyer program violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), and constituted a breach of contract. *Id.* at 224–26, 115 S.Ct. at 822. The Illinois Supreme Court held that the plaintiffs' claims

were not preempted by the ADA, describing frequent flyer programs as not essential, but merely peripheral to the operation of an airline. *Wolens v. American Airlines, Inc.*, 157 Ill.2d 466, 193 Ill.Dec. 172, 175, 626 N.E.2d 205, 208 (1993). The Illinois Supreme Court found that the plaintiffs' state law claims for money damages "related to American's rates, routes, and services" only "tangential[ly]" or "tenuous[ly]." *Id.* 193 Ill. Dec. at 175, 626 N.E.2d at 208.

The United States Supreme Court granted American Airlines's petition for writ of certiorari, 511 U.S. 1017, 114 S.Ct. 1396, 128 L.Ed.2d 69 (1994), and reversed the Illinois Supreme Court's judgment to the extent that it allowed survival of the plaintiffs' Consumer Fraud Act claims; the Supreme Court affirmed the Illinois Supreme Court's judgment to the extent it permitted the plaintiffs' breach of contract action to proceed. 513 U.S. at 226–28, 115 S.Ct. at 823.

First examining the plaintiffs' claims under the Consumer Fraud Act, the Supreme Court noted that the Consumer Fraud Act "serves as a means to guide and police the marketing practices of the airlines; the Act does not simply give effect to bargains offered by the airlines and accepted by the airline customers." *Id.* In other words, the Consumer Fraud Act was a vehicle through which the state could impose its policies, standards, and laws on the marketing practices of the airline. Thus, despite the fact that the Consumer Fraud Act is not directed solely at airlines (in fact, airlines are not mentioned in the text of the Act),[5] the Supreme Court determined that allowing the plaintiffs' claims under the Consumer Fraud Act would constitute a state enforcement of a

---

4. The Supreme Court rejected the petitioner's argument in *Morales* that the preemption provision of the ADA simply preempts states from prescribing rates, routes, or services. The Supreme Court stated that such a construction of the preemption provision "simply reads the words 'relating to' out of the statute." 504 U.S. at 385, 112 S.Ct. at 2037.

5. The Illinois Consumer Fraud Act forbids, in relevant part:
   Unfair methods of competition and unfair or deceptive acts or practices, including but not

limited to the use or employment of any deception, fraud, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" ... in the conduct of any trade or commerce ... whether any person has in fact been misled, deceived or damaged thereby.
815 Ill. Comp. Stat. § 505/2 (1992).

"law, rule, regulation, standard, or other provision" relating to American's "rates, routes, and services." *Id.* at 226–30, 115 S.Ct. at 823–24.[6]

However, the Supreme Court held that the same would not be true of breach of contract actions. The Supreme Court recognized that "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [§ ] 1305(a)(1)." *Wolens*, 513 U.S. at 228–29, 115 S.Ct. at 824. Further, the Supreme Court recognized that Congress deregulated the airline industry to promote maximum reliance on competitive forces, and that "[m]arket efficiency requires effective means to enforce private agreements." *Id.*

In conclusion, the Supreme Court held that the ADA's preemption provision prevented states from imposing their own substantive standards with respect to "rates, routes, or services," but not from affording relief to a party who proves that an airline dishonored a term that the airline itself stipulated, as follows:

The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 232–33, 115 S.Ct. at 826. Thus, the Supreme Court held that "routine breach of contract claims" are not preempted by the ADA. *Id.*[7]

Circuit courts applying the Supreme Court's decisions in *Morales* and *Wolens* have given the ADA's preemption provision a broad scope and, for the most part, have preempted state law tort actions where the subject matter of the action related to the price, route, or service of an airline. *See. e.g., Travel All Over The World v. Saudi Arabia,* 73 F.3d 1423 (7th Cir.1996); *Harris v. American Airlines, Inc.,* 55 F.3d 1472 (9th Cir.1995); *see also Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995) (en banc) ("Laws of general applicability, even those consistent with federal law, are preempted if they have the 'forbidden significant effect' on rates, routes or services."). In *Harris,* the Ninth Circuit held that the plaintiff's claim under the Oregon Public Accommodations Act was preempted by the ADA because the subject matter of the plaintiff's claims related to "service," as follows:

Harris seeks to apply Oregon state law ... to the in-flight service procedures of American Airlines. In *Wolens,* the Supreme Court held that the passengers' claims under the Illinois Consumer Fraud Act served as a means to guide and police the marketing practices of the airlines. In this case, Harris seeks to subject the airlines' in-flight service to its passengers to Oregon state tort law.

*Harris,* 55 F.3d at 1477. The court continued: "The Court in *Wolens* only excluded private contract terms from the wide scope of preemption, and Harris' claims do not come within this exclusion. Her claims are preempted by section 1305(a)(1)." *Id.*

Similarly, in *Travel All Over The World,* the Seventh Circuit acknowledged that for

---

**6.** As Justice O'Connor explained, "private parties ... may not enforce the Illinois consumer fraud law ... in an action whose subject matter relates to airline rates and services." *Wolens,* 513 U.S. at 238–40, 115 S.Ct. at 829 (O'Connor, J., concurring in part and dissenting in part).

**7.** Justices O'Connor and Thomas concurred in the part of the Supreme Court's judgment which held that the plaintiff's Consumer Fraud Act claims were preempted, but dissented from the

part of the Supreme Court's judgment permitting survival of the plaintiffs' breach of contract claim. Justice Stevens joined only the part of the Supreme Court's judgment which permitted survival of the plaintiffs' breach of contract claim and dissented from the portion of the judgment which held that the plaintiffs' Consumer Fraud Act claims were preempted. Justice Scalia took no part in the consideration or decision of the case.

preemption purposes, "the proper examination is ... whether the claims at issue either expressly refer to the airline's [prices, routes, or] services ... or would have a significant economic effect on the airline's services." 73 F.3d at 1434. In *Travel All Over The World*, where the plaintiffs brought both a tort claim and a contract claim, the Seventh Circuit recognized that "the plaintiffs' intentional tort claims [were] based on the same underlying conduct as ... their contract claim, which [was] not preempted by § 1305(a)(1)." *Id.* at 1435. "However," the court continued, "while *Wolens* protects contract claims that seek to enforce private agreements from preemption, it does not similarly shelter tort claims." *Id.* The court concluded that "to the extent that the intentional tort claims are [based on Saudia's services], such 'relate to' Saudia's services and are preempted by the ADA." *Id.*[8]

### C. Plaintiff's Claims, Except For Breach Of Contract, Are Preempted By The FAAAA

■ After considering the reasoning of Supreme Court and Circuit court cases interpreting the identical language of the ADA's preemption provision, the Court finds that a state law tort action against a carrier, where the subject matter of the action is related to the carrier's prices, routes, or services, is a state enforcement action having a connection with or reference to a price, route, or service of any motor carrier, motor private carrier, or air carrier for purposes of the FAAAA. *See Western Parcel Express v. United Parcel Serv., Inc.*, No. C–96–1526 CAL (N.D.Cal. Aug. 13, 1996); *Vieira v. United Parcel*

*Serv., Inc.*, No. C–95–04697 CAL ARB, 1996 WL 478686, at *1, 1996 U.S. Dist. LEXIS 11223, at *1–3 (N.D.Cal. Aug. 5, 1996); *Rowe v. United Parcel Serv., Inc.*, No. CV–S–96–862–PMP (RLH, 1996 U.S. Dist. LEXIS 11266, at *1–2) (D.Nev. Jul. 31, 1996); *Carsten v. United Parcel Serv., Inc.*, No. S–95–862, 1996 WL 335421, 1996 U.S. Dist. LEXIS 5798 (E.D.Cal. Mar. 20, 1996); *United Parcel Serv., Inc. v. Benz*, No. C95 1900 VRW, slip op., Ex. A, at 14, 15 (N.D.Cal. Mar. 1, 1996); *St. Johnsbury Trucking Co. v. Mead Johnson*, 199 B.R. 84 (S.D.N.Y.1996); *Industrial Freight Sys., Inc. v. Barnett*, 191 B.R. 825 (Bankr.C.D.Cal.1996). Accordingly, any such state law tort action is preempted by the FAAAA.

■ All of Plaintiff's claims here, with the exception of Plaintiff's breach of contract claim, are preempted by the FAAAA. At the core of each of Plaintiff's claims is Plaintiff's allegation that Defendant inappropriately charged Plaintiff *prices* based on the "dimensional weight" of various packages when Defendant should have charged Plaintiff *prices* based on the actual weight of the packages. The subject matter of all of Plaintiff's claims relate to prices charged by Defendant for various services and thus all of Plaintiff's claims (with the exception of Plaintiff's contract claim) impose state laws, standards, and policies external to any agreement between Plaintiff and Defendant on Defendant's conduct relating to its pricing practices.

Apparently attempting to reconcile its claims with the dictates of *Wolens*, Plaintiff argues that its claims are not preempted because they are all, in effect, based on

---

8. Plaintiff cites three cases where courts have allowed personal injury suits to proceed against airlines. However, each of Plaintiff's cases are distinguishable. For example, in *Public Health Trust v. Lake Aircraft*, 992 F.2d 291 (11th Cir. 1993), the Eleventh Circuit held only that a products liability action based on a design defect was based on a matter unrelated to airline rates, routes, or services. *Id.* at 295. In *Stagl v. Delta Air Lines, Inc.*, 849 F.Supp. 179 (E.D.N.Y.1994), the district court determined only that the ADA did not preempt actions based on an airlines's failure to exercise ordinary care in keeping its premises reasonably safe. *Id.* at 182. Finally, in *Rodriguez v. American Airlines, Inc.*, 886 F.Supp. 967 (D.P.R.1995), the district court held only

that state personal injury claims based on safety or a lack thereof are not related to "services" for purposes of the ADA. *Id.* at 971. Moreover, the Court notes that the Plaintiff's common law fraud and statutory fraud claims are materially indistinguishable from the fraud claims the Supreme Court held were preempted in *Wolens*.

Plaintiff also argues that preemption is inappropriate here, because Plaintiff's claims are consistent with the purpose of the preemption statute. However, the Supreme Court squarely rejected this very argument in interpreting the scope of the ADA's preemption provision in *Morales*. *Morales*, 504 U.S. at 386–87, 112 S.Ct. at 2038–39. The Court finds this argument equally without merit here.

Defendant's contractual obligations. Plaintiffs attempt to circumvent *Wolens* in ineffectual, as *Wolens* itself declared that courts are permitted to hold the parties to the contract "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233, 115 S.Ct. at 826; *see also Travel All Over The World*, 73 F.3d at 1435.

Justice Stevens' dissent (in part) in *Wolens* shows that Plaintiff's attempt to base its tort claims on Defendant's contractual obligations is without merit. Justice Stevens disagreed with the majority's distinction between state law tort actions and contract actions, especially when the actions "are grounded in the exact same conduct and would presumably have an identical impact upon [the defendant's] rates, routes, and services." *Wolens*, 513 U.S. at 236, 115 S.Ct. at 827 (Stevens, J., concurring in part and dissenting in part). Justice Stevens saw "no reason why the ADA should pre-empt a claim that the airline defrauded its customers in the making and performance of that very same agreement." *Id.*

■ However, the majority opinion in *Wolens* made this distinction. That done, it would be a hollow distinction if plaintiffs merely could shift the focus of their state law tort claims from the conduct of defendants directly to the conduct of defendants pursuant to a contract. Essentially, allowing Plaintiff to bring tort claims based on contractual obligations would create a state enforced right to a specific price or pricing practice, as opposed to a privately ordered agreement to a specific price or pricing practice. Avoiding the creation of these "state enforced rights" is part of the reason the Supreme Court has held that state law tort actions are preempted. *Morales*, 504 U.S. at 388, 112 S.Ct. at 2039(ADA); *Pilot Life*, 481 U.S. at 43–44, 47–48, 107 S.Ct. at 1550–51, 1552–53 (ERISA). Thus, the Court finds

that Plaintiff's state law tort claims—which would be preempted if they were based on any state-imposed obligations external to a contract—also are preempted when they are based, as they are here, on Defendant's obligations pursuant to a contract.

■ Further, the Court notes that Plaintiff's Complaint seeks punitive damages and injunctive relief. While the Supreme Court in *Wolens* did not address specifically the issue whether claims for punitive damages or injunctive relief based on a breach of contract are preempted by the ADA, the Supreme Court did state explicitly that the parties should be held to their bargain, with no enlargement or enhancement based on state policy. An award for punitive damages would constitute such an enhancement. *See Travel All Over The World*, 73 F.3d at 1432 n. 8 ("Rather than merely holding parties to the terms of a bargain, punitive damages represent an 'enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement.'" (internal quotation marks omitted)).[9] The Court also finds that the extraordinary award of injunctive relief would remove a contract claim from the realm of *"routine* breach of contract actions." *Wolens*, 513 U.S. at 232, 115 S.Ct. at 826.[10] Applying this reasoning to the preemption provision of the FAAAA, the Court finds that Plaintiff's claims for punitive damages and injunctive relief based on its breach of contract claim are also preempted by the FAAAA.

Accordingly, Plaintiff's claims for common law fraud, statutory fraud, negligence, gross negligence, unjust enrichment and imposition of constructive trust, and Plaintiff's claims for punitive damages and injunctive relief based on Plaintiff's claim for breach of contract are preempted by the FAAAA. The Court **GRANTS** Defendant's Motion to Dismiss these claims.

---

9. Alternatively, under Georgia law, a plaintiff cannot be awarded punitive damages on a breach of contract claim. *See Trust Co. Bank. v. Citizens & Southern Trust Co.*, 260 Ga. 124, 126, 390 S.E.2d 589 (1990).

10. Alternatively, the Court finds that Plaintiff has an adequate remedy at law—compensatory damages; thus, Plaintiff's claim for injunctive relief lacks merit as a matter of law and is dismissed. *Church v. Huntsville*, 30 F.3d 1332, 1343 (11th Cir.1994); *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990); *Housing Authority v. MMT Enterprises, Inc.*, 267 Ga. 129, 129, 475 S.E.2d 642 (1996).

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss [12–1] counts two, three, four, five, and six of Plaintiff's Complaint, and the Court **GRANTS** Defendant's Motion to Dismiss count one of Plaintiff's Complaint to the extent Plaintiff seeks punitive damages and injunctive relief on that claim. In sum, the Court **GRANTS** Defendant's Motion to Dismiss each of the claims Defendant asserts are preempted by federal law.

Only Plaintiff's breach of contract action for compensatory damages in count one shall proceed in this action.

## ORDER

This matter is before the Court on Plaintiff's Motion to Reconsider the portion of this Court's January 29, 1997 Order that held that Plaintiff's breach of contract action for injunctive relief is precluded by the Federal Aviation Administration Authorization Act of 1994 ("the FAAAA"). The Court **DENIES** Plaintiff's Motion to Reconsider for the reasons outlined below.

## I. DISCUSSION

### A. Plaintiff's Motion Does Not Satisfy Local Rule 220–6

■ Local Rule 220–6 of the Northern District of Georgia states that a motion for reconsideration shall not be filed as a matter of practice, but rather only when a party or attorney believes it absolutely necessary, as follows:

> Motions for reconsideration *shall not be filed as a matter of routine practice.* Whenever a party or attorney believes it is *absolutely necessary* to file a motion to reconsider ... [it] shall be filed with the Clerk of the Court within 10 days after the entry of the order or judgment....

LR 220–6 NDGa (emphasis supplied). Indeed, the term "motion to reconsider" or "motion for reconsideration" does not exist in the Federal Rules of Civil Procedure. Federal Rule 60(b), under which most "motions to reconsider" are filed is titled "Relief From Judgment or Order—Mistakes; Inadvertence; Excusable Neglect; Newly Discover-

ed Evidence; Fraud, etc." "Rule 60(b) is 'properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme or undue hardship'...." *Preserve Endangered Areas of Cobb's History ("PEACH") v. United States Army Corps of Engineers,* 916 F.Supp. 1557, 1560 (N.D.Ga.1995) (quoting *Mohammed v. Sullivan,* 866 F.2d 258, 260 (8th Cir.1989) (internal quotes omitted)), *aff'd,* 87 F.3d 1242 (11th Cir.1996).

■ In other words, "a motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time." *PEACH,* 916 F.Supp. at 1560. Rather, the motion should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice. *Id.* Because Plaintiff has not met this standard, Plaintiff is not entitled to a reconsideration of the Court's earlier ruling. However, even reconsidering its earlier Order, the Court would adhere to its prior ruling for the reasons outlined below.

### B. Claims For Injunctive Relief Are Precluded By The FAAAA

In *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the United States Supreme Court interpreted the preemption provision of the Airline Deregulation Act as preempting all state law causes of action relating to an airline's rates, routes, or services except for *routine* breach of contract actions *with no enlargement or enhancement based on state laws or policies external to the agreement. Id.* at 232–34, 115 S.Ct. at 826. In its January 29, 1997 Order, this Court held (and Plaintiff does not contest here) that the Supreme Court's interpretation of the preemption provision of the ADA defines the scope of the preemption provision of the FAAAA.

In the Court's previous Order, the Court found that the FAAAA's preemption provision barred Plaintiff's breach of contract action for injunctive relief because the granting of equitable relief cannot be said to be rou-

tine, especially as a remedy for a breach of contract. Indeed, the Georgia courts recognize that an injunction in a breach of contract action is an "extraordinary equitable remedy." *Housing Authority v. MMT Enterprises, Inc.*, 267 Ga. 129, 130, 475 S.E.2d 642 (1996); *Chadwick v. Dolinoff*, 207 Ga. 702, 703, 64 S.E.2d 76 (1951).

Additionally, the granting of an injunction in this case can only serve to undercut the purpose of the FAAAA's preemption provision. Congress enacted the preemption provision to free carriers from the burdens of state regulation. While the Supreme Court held in *Wolens* that allowing routine breach of contract actions is not state regulation, but rather merely enforces terms that the Airline itself agreed to, this logic carries less force when equitable remedies are at issue. Before a court grants equitable relief, it necessarily must consider numerous competing interests, including interests of the parties and whether the public interest supports the granting of an injunction. In sum, the Court, guided by principles which have established residence in the state law, must consider more than just the terms of the contract itself.

In *Wolens*, the Supreme Court noted that in allowing routine breach of contract actions, it allowed state regulation of rates, routes, and services at least to the extent that state law commands parties of a contract to adhere to the contract's terms. *Wolens*, 513 U.S. at 233 n. 8, 115 S.Ct. at 826 n. 8; *id* at 238–43, 115 S.Ct. at 829–30 (O'Connor, J., concurring in part, dissenting in part). However, the only state law at issue in most routine breach of contract actions is that fundamental proposition (shared by all of the 50 states) that the state will enforce the terms of the parties' agreement. The regulatory entity by which the parties' conduct is governed is still the private agreement itself. State law merely authorizes relief, generally legal relief, to the non-breaching party thereby placing the non-breaching party in the position it would have been in if no breach had occurred.

Injunctive relief, on the other hand, requires regulation on the part of the Court. While it may be said fairly that the Court in granting equitable relief is merely enforcing the terms of the private agreement, the means of enforcement is far more intrusive than is normal in breach of contract actions. Once a court issues an injunction, a breach is no longer just a breach, but is also a violation of a court order. The court, thus, must ensure compliance with its injunction and can do so through the force of its equitable powers (and sanctions).

The language of Supreme Court opinions are not subject to the same rules of statutory construction as statutes. Nonetheless, interpretations are defined by the words through which they are expressed. In *Wolens*, the Supreme Court did not hold that breach of contract actions are not preempted, but rather held that *routine* breach of contract actions *with no enlargement or enhancement based on state laws or policies external to the agreement* are not preempted. These words have meanings, and their meanings have an import. At the very least, the Supreme Court signaled to lower courts that the state policies merely enforcing the parties' terms (a policy present in *Wolens*) are okay, but that policies that do more are not. While the Supreme Court did not provide detailed instructions distinguishing the former type of policies from the latter, it did establish a general guideline.

Injunctions, which are granted only upon a finding of no adequate remedy at law, are not routine in breach of contract actions. To the extent an adequate legal remedy exists in a given case, any additional equitable remedy would be excessive and unnecessary and thus an enhancement based on factors external to the contract. Because the Court finds that Plaintiff has an adequate remedy at law in this case,*see MMT Enterprises*, 267 Ga. at 130, 475 S.E.2d 642, any such enhancement is precluded by the preemption provision of the FAAAA. But even notwithstanding the existence of any adequate remedy at law, the force of a court order requiring the performance of terms of a contract provides an extra dimension that comes from a source external to the contract, especially here where Plaintiff seeks specific performance (which Georgia courts generally do not sanction in cases involving service contracts) *and*

corrective action (which clearly would not come from the contract).

The Court adheres to its earlier ruling that Plaintiff's breach of contract action for injunctive relief is preempted by the FAAAA.

## II. *CONCLUSION*

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Reconsider [39–1].