**BARBER AUTO SALES, INC.,** individually and on behalf of all persons similarly situated, Plaintiff,

v.

**UNITED PARCEL SERVICES, INC.,** Defendant.

No. 5:06–CV–4686–1PJ.

United States District Court,
N.D. Alabama,
Northeastern Division.

June 5, 2007.

Dennis G. Pantazis, Wiggins Childs Quinn & Pantazis, Birmingham, AL, E. Clayton Lowe, Jr., Peter A. Grammas, Lowe Grammas & Hitson, Vestavia Hills, AL, James M. Corder, Jr., Alexander Corder Plunk & Shelly, PC, Athens, AL, for Plaintiff.

Barry Goheen, Paul J. Murphy, Sidney S. Haskins, II, King & Spalding LLP, Atlanta, GA, Jere F. White, Jr., Natasha L. Wilson, Terrence W. McCarthy, Lightfoot Franklin & White LLC, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

JOHNSON, District Judge.

Pending before the court is the defendant United Parcel Services, Inc.'s, ("UPS") motion for judgment on the pleadings (doc. 22) filed with a supporting brief (doc. 23) and evidentiary materials (doc. 24). Plaintiff Barber Auto Sales, Inc., ("Barber") filed a response in opposition to the motion (doc. 28) to which UPS filed a reply (doc. 33).

### FACTUAL BACKGROUND

Barber and UPS entered into a series of contractual shipping agreements beginning in January 2000. First Am. Compl. at ¶ 8; Def.'s Ex. A. These contracts include the Carrier Agreement, which expressly incorporates the UPS General Tariff, addenda to the UPS General Tariff, and the UPS Rate and Service Guide. Def.'s Ex. A; Def's Ex. B; & Def.'s Ex. C–H at Item 400. These documents are collectively referred to as the "UPS Customer Agreement."

Under the UPS Customer Agreement, the rates that UPS charges for shipping packages are based upon a number of factors including the level of service provided and the weight and size of the shipment. First Am. Compl. at ¶ 10; Def.'s Ex. B at 20, 23–108. With respect to the size of each shipment, UPS charges based on either the "dimensional weight" or the "actual weight." Def.'s Ex. B at 20–21. The dimensional weight reflects "the amount of space a package occupies in relation to its actual weight" and the dimensional weight is calculated by multiplying package length by width by height to determine the cubic size, and then, for domestic packages, dividing the cubic size by 194. *Id.* at 20–21. The actual shipping charge is the greater of the actual or dimensional weight. *Id.* at 21.

Under UPS Customer Agreement, Barber self-selects and inputs into the UPS system the level of service and weights and sizes of the packages it ships and by which it is charged for UPS services. First Am. Compl. at ¶¶ 9, 11; Def.'s Ex. B at 20–22; Def.'s Ex. C–G at Items 446–47; Def's Ex. H at Item 446. If Barber inputs incorrect information, it may undercharge or overcharge itself for UPS services. First Am. Compl. at ¶ 10; Def.'s Ex. B at 23.

The UPS Customer Agreement gives UPS the right to audit Barber's shipments to verify the package or shipment weight or dimensions and to determine if Barber paid the appropriate charges. First Am. Compl. at ¶ 11; Def.'s Ex. B at 142; Def.'s Ex. C–H at Items 450. Barber is required

to notify UPS of any disputed shipping charges within 180 days of receiving a contested invoice, or the billing dispute is waived. Def's Ex. B at 142; Def.'s Ex. C–H at Item 450. In addition, since 2005, the Customer Agreement has included a provision stating that "[a]ll claims against UPS arising from or related to the provision of services by UPS ... shall be extinguished unless the shipper ... pleads on the face of any complaint filed against UPS satisfaction and compliance with those notice and claims periods as a contractual condition precedent to recovery." Def.'s Ex. C–E at Item 505.

Barber filed this breach of contract action against UPS alleging that UPS "manipulated [the] audit procedures so that it could improperly invoice plaintiff increased shipping charges based on false dimensions." First Am. Compl. at ¶ 12. Barber sued UPS both individually and on behalf of a class of similarly situated persons. *Id.* at ¶¶ 15–22. Barber seeks (1) monetary damages for breach of contract, (2) an order voiding all contracts "to the extent that [UPS] assessed improper increased shipping charge corrections" on packages; and (3) an injunction prohibiting UPS from assessing improper shipping charges and requiring UPS to conform its practices to comply with the terms and conditions and courses of dealing between the parties. *Id.* at ¶¶ 28–30.

## STANDARD OF REVIEW

A party is entitled to a judgment on the pleadings when no material facts are in dispute and the moving party is entitled to a judgment as a matter of law. *Palmer & Cay, Inc. v. Marsh & McLennan Cos.,* 404 F.3d 1297, 1303 (11th Cir.2005). The court must view the facts in the light most favor-

able to the non-moving party and the motion is due. to be granted only if the non-moving party can prove no set of facts which would allow it to prevail. *Id.*

## ANALYSIS

**A. Barber's Claims for Equitable Relief and Preemption under the FAAAA**

Although the parties agree that Barber is entitled to pursue its breach of contract claim, UPS argues that it is entitled to a judgment on the pleadings with respect to Barber's claims for equitable relief. Specifically, UPS contends that Barber's claims for equitable relief are preempted under the Federal Aviation Administration Authorization Act of 1904 (the "FAAAA"), 49 U.S.C. § 14501(c)(1) and § 41713(b)(4).

Under the FAAAA preemption clause, "a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1) (emphasis added).[1] In adopting the FAAAA, Congress used the same preemptive language that is used in the preemption provision of the Airline Deregulation Act (the "ADA"). *See Deerskin Trading Post, Inc., v. United Parcel Service of America, Inc.,* 972 F.Supp. 665, 668 (N.D.Ga.1997) (noting that the preemption provision of the FAAAA employs identical language to the preemption provision of the ADA). The Supreme Court has explained that the ADA was enacted in 1978 to

·      ·      ·      ·      ·

deregulate[ ] domestic air transport. "To ensure that the States would not undo federal deregulation with regula-

---

1. The FAAA also contains a preemption clause stating that "a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier ..." 49 U.S.C. § 41713(b)(4)(A).

tion of their own," *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992), the ADA included a preemption clause which read in relevant part:

"[N]o State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier...." 49 U.S.C.App. § 1305(a)(1).

*American Airlines, Inc. v. Wolens,* 513 U.S. 219, 222–223, 115 S.Ct. 817, 821, 130 L.Ed.2d 715 (1995).[2] Because the preemption provisions of the ADA and the FAAAA contain similar language, courts that have interpreted the preemptive scope of the FAAAA have relied on cases that address the preemptive scope of the ADA. *See, New Hampshire Motor Transport Ass'n v. Rowe,* 448 F.3d 66, 80 (1st Cir.2006); *Deerskin,* 972 F.Supp. at 669–672; *Desardouin v. United Parcel Service, Inc.,* 285 F.Supp.2d 153, 162 (D.Conn. 2003); *Californians For Safe and Competitive Dump Truck Transp. v. Mendonca,* 957 F.Supp. 1121, 1126 (N.D.Cal.1997); *Smith v. United Airlines, Inc.,* No. 00–50373, 2002 WL 31236392, at *2 (N.D.Ill. Oct.3, 2002); and *Western Parcel Exp. v. United Parcel Service of America, Inc.,* No. 96–1526, 1996 WL 756858, at *1 (N.D.Cal. Dec 3, 1996).

■ The Supreme Court interpreted the scope of the ADA preemption provision and held that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under the ADA's preemption provision." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). In *Morales,* the Supreme Court interpreted

the preemption provision of the ADA as having a broad preemptive scope. *Morales,* 504 U.S. at 383, 112 S.Ct. 2031. In *American Airlines, Inc., v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Supreme Court again addressed the preemption provision of the ADA. The court stated that the ADA's preemption clause

... stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 232–33, 115 S.Ct. 817. The court held that, although a claim brought under a state consumer fraud act was preempted by the ADA, that "routine breach of contract claims" would not be preempted by the ADA. *Wolens,* 513 U.S. at 232–233, 115 S.Ct. 817. Therefore, the court finds that the preemption provision of the FAAAA also has a broad preemptive scope and that state enforcement actions having a connection with or reference to a "price, route, or service of any motor carrier" are preempted by the FAAAA. *See Deerskin,* 972 F.Supp. at 668 ("the Court finds that Congress intended for the preemption provision of the FAAAA-which employs identical language to the preemption provision of the ADA-to be broad in scope ...").

■ Although the parties agree that Barber's "routine breach of contract claims" are not preempted by the FAAAA,

2. Congress had since revised the preemption provision of the ADA to read:

"[A] State ... may not enact or enforce a law, regulation, or other provision having

the force and effect of law related to a price, route, or service of an air carrier...."

49 U.S.C. § 41713(b)(1)

the parties dispute whether Barber's equitable claims are preempted by the FAAAA. UPS argues that the equitable claims would be an enlargement of the agreement between UPS and Barber, and would therefore be preempted by the FAAAA. Barber argues that its equitable claims are essentially based on UPS's contractual obligations and are therefore not preempted.

Under the ADA preemption provision, the Supreme Court held that the parties should be held to their bargain, with no enlargement or enhancement based upon state policy. Applying that rule to the preemption provision of the FAAAA, the court finds that injunctive relief would constitute an enlargement or enhancement of the parties' bargain. An injunction is an extraordinary remedy that would go beyond the remedies available in a "routine breach of contract action." *Wolens*, 513 U.S. at 232, 115 S.Ct. 817. *See also Ex parte Alabama Dept. of Mental Health and Retardation*, 837 So.2d 808, 811 (Ala. 2002) ("Injunctive relief is extraordinary relief[.]"); *Deerskin*, 972 F.Supp. at 675. (holding that injunctive relief as a remedy for breach of contract is "far more intrusive than is normal in a breach of contract action."). Thus, the court finds that Barber's claims for injunctive relief are preempted by the FAAAA. *See Deerskin*, 972 F.Supp. at 673 ("The Court also finds that the extraordinary award of injunctive relief would remove a contract claim from the realm of '*routine* breach of contract actions.'") (quoting *Wolens*, 513 U.S. at 232, 115 S.Ct. 817). Barber also seeks an order of the court to void the contract with UPS "to the extent that the defendant assessed improper shipping charge corrections." First Am. Compl. at ¶ 29. The court finds that Barber's equitable claim for rescission of the contract is also preempted by the FAAAA because it would constitute an enlargement or enhancement of the parties' bargain. *See*

*Deerskin*, 972 F.Supp. at 674–75 ("the granting of equitable relief cannot be said to be routine, especially as a remedy for a breach of contract").

For the foregoing reasons, the Court finds that Defendant's motion for judgment on the pleadings with respect to Barber's claims for equitable relief is due to be **GRANTED**.

### B. Class Claims Under Rule 23(b)(2)

Certification of a class under Rule 23(b)(2) is applicable when final injunctive relief or corresponding declaratory relief with respect to the class is appropriate. *See* FED. R. CIV. P. 23(b)(2). Because the court finds that UPS is entitled to a judgment on the pleadings with respect to Barber's claims for injunctive relief, UPS is also entitled to a judgment on the pleadings with respect to Barber's class allegations brought under Rule 23(b)(2).

### C. Breach of Contract Claim

#### 1. The 18–Month Limitations Period of 49 U.S.C. § 14705(b)

Under 49 U.S.C. § 14705(b), a claim for overcharges brought by a shipper against carrier must be brought within 18 months after the claim accrues. UPS argues that under this provision, Barber's breach of contract claim must be dismissed to the extent that Barber seeks recovery for any breach that accrued more than 18 months before filing the lawsuit. Barber argues that § 14705(b) does not apply to its state-law cause of action for breach of contract, and that the limitations period in this provision only applies to claims brought under federal statutes. Barber cites *Learning Links, Inc. v. United Parcel Service of America*, No. 03–7902, 2006 WL 785274 (S.D.N.Y. March 27, 2006), in which the court held that the 18–month limitations period set out in § 14705(b) does not apply to state-law claims and that it applies only to claims asserted under the

Carmack Amendment, 49 U.S.C. § 14706.[3] On motion for reconsideration, the court revisited the issue of whether the limitations period set out in § 14705(b) applies to state law claims. *Learning Links, Inc., v. United Parcel Service of America, Inc.*, No. 03–7902, 2006 WL 2466252 (S.D.N.Y. August 24, 2006). The court denied the motion for reconsideration and held that § 14705(b) applied "only to claims brought under the statutory section immediately preceding it." *Id.* at *2. The section preceding § 14705(b) states "[a] carrier providing transportation or service ... is liable to a person for amounts charged that exceed the applicable rate for transportation or service contained in a tariff in effect under section 13702" and that a person may bring a civil action to enforce such liability. 49 U.S.C. § 14704(b) & (c)(1). Thus, the court held that because § 14705(b) only applies to the preceding section, "the eighteen-month statute of limitations on 'overcharge' claims applies only to carriers who charge more than their published tariff rates." *Id.*

The court disagrees with the analysis of the court in both *Learning Links* cases. The plain language of § 14705(b) states that, with respect to claims for overcharges brought against carriers, the individual must begin any civil action within 18 months after the claim accrues. Nothing in the text of § 14705(b) states that it applies only to a cause of action brought under the Carmack Amendment or under § 14704(b) & (c)(1). Further, nothing in the text of § 14705(b) indicates that the 18 month limitations period is restricted to claims arising under federal law. *Cf. Arctic Express, Inc. v. Del Monte Fresh Produce NA, Inc.*, 366 B.R. 786, 792–93 (S.D.Ohio 2007) (holding that the 18 month statute of limitations set forth in the Interstate Commerce Act, 49 U.S.C. § 14705(a), applied to a motor carrier's state-law claims seeking recovery against a shipper for unpaid freight charges); *CGH Transport, Inc. v. Quebecor World, Inc.*, No. 05–209, 2006 WL 1117659, at *2 (E.D.Ky. Apr.24, 2006) (rejecting the contention that the 18 month statute of limitations period set out in § 14705(a) was inapplicable state-law claims). Accordingly, the court finds that the 18 month limitations period set out in § 14705(b) applies to Barber's state-law breach of contract claim. UPS's motion for a judgment on the pleadings is due to be **GRANTED** to the extent that Barber seeks recovery for any breach that accrued more than 18 months before filing the lawsuit.

## 2. Contractual Notice Provision

Since January 7, 2002, the Customer Agreement between UPS and Barber required that Barber provide notice to UPS of any disputed shipping charges within 180–days of receiving the invoice. Def.'s Ex. C–H at Item 450 ("Shippers requesting an invoice adjustment ... must notify UPS of the request within 180 days of receiving the contested invoice, or any billing dispute is waived").[4] Barber does not

---

3. The Carmack Amendment states in relevant part:

   A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property.
   49 U.S.C. § 14706(a)(1).

4. In 2005, the language of the Customer Agreement changed with regard to the 180–day notice provision. Specifically, since 2005 the Customer Agreement required that "[a]ll claims against UPS arising from or related to the provision of service by UPS ... shall be extinguished unless the shipper ... pleads on the face of any complaint filed against UPS satisfaction and compliance with those notice and claims periods as a contractual condition

dispute that contractual conditions precedent such as the 180–day notice provision can be enforced by the court, and other courts have enforced such provisions. *See Williams v. Federal Express Corp.*, No. 99–06252, 1999 WL 1276558, *3–4 (C.D.Cal. Oct.6, 1999) (holding that Federal Express was entitled to a judgment as a matter of law on plaintiff's breach of contract claim because of the plaintiff's failure to comply with the contractual notice provision); *Reliance Ins. Co. v. Federal Express Corp.*, No. 84–6498, 1985 WL 2241, *3 (S.D.N.Y. Aug.1, 1985) (dismissing plaintiffs' claims for failure to comply with contractual notice requirement). The court finds that UPS is entitled to a judgment on the pleadings on Barber's breach of contract claim with respect to any alleged breaches in which Barber did not give notice to UPS of the disputed charges within 180 days of receiving the invoice. Said claims are barred for failure to meet a contractual condition precedent to recovery.[5]

## CONCLUSION

In consideration of the forgoing, the court hereby **ORDERS** as follows:

UPS's motion for a judgment on the pleadings with respect to Barber's equitable claims for relief is **GRANTED**, the court finding that Barber is entitled to a judgment as a matter of law on Barber's equitable claims for relief; said claims are therefore **DISMISSED WITH PREJUDICE.**

Because the court finds that UPS is entitled to a judgment on the pleadings with respect to Barber's claims for injunctive relief, UPS's motion for judgment on the pleadings with respect to Barber's class allegations brought under Rule 23(b)(2) is **GRANTED** and the Rule 23(b)(2) class claims are **DISMISSED WITH PREJUDICE.**

UPS's motion for a judgment on the pleadings with respect to Barber's claims that accrued more than 18–months before filing the complaint in this case is **GRANTED**, the court finding that Barber is entitled to a judgment as a matter of law with respect to said claim. These claims are therefore **DISMISSED WITH PREJUDICE.**

With respect to Barber's claims based upon disputed charges that have occurred since January 7, 2002, UPS's motion for a judgment on the pleadings is **GRANTED** to the extent that Barber did not give notice to UPS of the disputed charges within 180 days of receiving the invoice. Said claims are therefore **DISMISSED WITH PREJUDICE.**

---

precedent to recovery." Def.'s Ex. B at 142; Def.'s Ex. C–E at Item 505.

**5.** The parties also dispute whether the 180–day statutory notice provision set out in 49 U.S.C. § 13710(a)(3)(B) applies to Barber's

claims against UPS. Because the court finds that the contractual 180–day notice provision in the Customer Agreement applies to Barber's claims, the court does not need to address the applicability of § 13710(a)(3)(B).