**MASTERCRAFT INTERIORS, LTD. Plaintiff,**

v.

**ABF FREIGHT SYSTEMS, INC. Defendant.**

**No. CIV.A. RDB–03–1580.**

United States District Court, D. Maryland, Southern Division.

Sept. 17, 2003.

Charles R. Claxton, Garson & Associates, LLC, Bethesda, MD, for Plaintiff.

Kenneth E. Siegel, Strasburger and Price, LLP, Washington, DC, Alexia Kent Bourgerie, Eugene W. Policastri, Stein, Sperling, Bennett, De Jong, Driscoll and Greenfeig, PC, Rockville, MD, for Defendant.

## MEMORANDUM OPINION

BENNETT, District Judge.

Pending is the Motion to Dismiss of the Defendant ABF Freight Systems, Inc. ("ABF"). Plaintiff Mastercraft Interiors, Ltd. ("Mastercraft") sued the Defendant in a four-count Complaint, alleging Breach of Contract (Count I), misrepresentation (Count II), negligent misrepresentation (Count III), and unjust enrichment/restitution (Count IV) in the overcharging of shipping costs. The issues have been fully briefed by the parties, and no oral argument is necessary. *See* Local Rule 105.6 (D.Md.2001). For the reasons stated below, ABF's Motion to Dismiss will be GRANTED in part, and DENIED in part. Accordingly, Counts II, III, and IV of Plaintiff's Complaint shall be dismissed, as

these causes of action under state law are preempted by federal law. With respect to Count I, alleging Breach of Contract, the motion is DENIED, and the Plaintiff's case shall proceed.

## BACKGROUND

The facts are recited in the light most favorable to the Plaintiff, as they must be for purposes of this Motion to Dismiss. *See DeBauche v. Trani,* 191 F.3d 499, 505 (4th Cir.1999). Mastercraft regularly purchased furniture from a furniture manufacturer in El Monte, California. Mastercraft paid the furniture manufacturer for the shipping directly, but ABF, a motor carrier, actually performed the shipping service.

In December 2000, the furniture manufacturer raised its shipping prices. In response, Mastercraft spoke directly with ABF to procure shipping services at a lower cost. Mastercraft alleges that as a result of these conversations, ABF promised that Mastercraft could save money by shipping directly with ABF, and that ABF would charge less than $3,000.00 per truck load.

In reliance on such promises, Mastercraft ceased shipping through the furniture manufacturer, and began shipping directly with ABF. Mastercraft alleges that the invoices sent to Mastercraft for the shipping services did not indicate whether the particular items for which the charges were levied constituted a truck load, or more, or less, than a truck load. Nevertheless, in reliance on the alleged oral agreement, Mastercraft paid the invoices.

At some point later, Mastercraft realized that its shipping costs had increased after commencing business directly with ABF, and believed that ABF was not charging the rates allegedly orally agreed upon. Mastercraft alleges that it immediately protested the charges to ABF, by demanding that ABF return the overcharges and by refusing to pay the pending invoices.

Mastercraft commenced this suit on May 30, 2003, alleging breach of contract, misrepresentation, negligent misrepresentation, and unjust enrichment under state law. On June 26, 2003, Defendant ABF filed this Motion to Dismiss all counts of the Complaint, arguing that the Plaintiff's claims are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 42 U.S.C. § 13902, Pub.L. No. 104–88, 109 Stat. 803 (1995). The Defendant alternatively argues that any claim under the ICCTA must be contested within 180 days of receipt of the bill. Thus, ABF argues, Plaintiff, having failed to do so, is now barred from disputing freight bills received more than 180 days prior to the date of filing its complaint.

## ANALYSIS

### A. Legislative History

In 1995, Congress enacted the Interstate Commerce Commission Termination Act, 42 U.S.C. § 13902, Pub.L. No. 104–88, 109 Stat. 803 (1995). The ICCTA, as enacted in 1995, contains a specific preemptive provision providing that:

> ... a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier
> . . . .

49 U.S.C. § 14501(c)(1) (1995). This preemptive provision had been part of the Federal Aviation Administration Authority Act ("FAAAA") passed by Congress in 1994. 49 U.S.C. § 11501(h)(1). *See Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.,* 972 F.Supp. 665, 668 (N.D.Ga.1997).

In *Deerskin Trading Post,* the district court thoroughly discussed the legislative

history of the FAAAA and found that Congress intended the preemption provision "to be broad in scope." *Id.* at 668. The *Deerskin* court further found that the preemptive provisions of the FAAAA were intended by Congress "to be applied in an identical manner as the preemption provision of the A[irline] D[eregulation] A[ct] ("ADA")." *Id.* In that regard, the district court noted the opinion of the United States Supreme Court in *Morales v. Trans World Airlines Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), wherein "the Supreme Court determined that Congress intended the preemption provision of the ADA to be broad in scope." *Id.* at 670.

The legislative history of the ICCTA indicates that Congress specifically intended to codify the broad scope of the preemption provision accorded by the Supreme Court in the *Morales* case. In the case *sub judice*, Defendant ABF has noted that the House Conference Report explains that this preemptive provision "is identical to the preemption provision deregulating air carriers ... and is intended to function [in] the exact same manner...." H.R. Conf. Rep. No. 103–677, 103rd Cong., 2d Sess. 85 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1757. Defendant ABF has further noted that this House Conference Report specifically states that "the conferees do not intend to alter the broad interpretation adopted by the United States Supreme Court in *Morales* ...." *Id.* at 1755. Thus, the legislative history of the ICCTA clearly reflects the intent of Congress that preemption provisions, such as that *sub judice*, are to be given broad scope, as federal law must govern shipping prices and services.

## B. Case Law Interpretation of Preemption Provisions

Both parties appear to agree that there is a dearth of case law interpreting the preemptive provision of the ICCTA, and,

thus, case law interpreting the Airline Deregulation Act ("ADA") is particularly instructive in analyzing the issues in this case. After its opinion in *Morales*, according broad scope to the preemption provisions of the ADA, the Supreme Court in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), noted a distinction between contract claims and tort claims.

In *Wolens*, the plaintiffs, as participants in American Airlines' frequent flyer program, challenged American's retroactive changes in program terms and conditions—particularly, American's imposition of capacity controls (limits on seats available to passengers obtaining tickets with frequent flyer credits) and blackout dates (restrictions on dates such credits could be used). *Id.* at 225, 115 S.Ct. 817. The plaintiffs sued for violation of the Illinois Consumer Protection Act and for breach of contract. *Id.* at 226, 115 S.Ct. 817.

The *Wolens* Court first noted that whether the plaintiffs' state claims related to air carrier rates, routes, or services was simply not at issue, as they clearly related to "rates," *i.e.*, American's charges in the form of mileage credits for free tickets and upgrades, and to "services," *i.e.*, access to flights and class-of-service upgrades unlimited by retrospectively applied capacity controls and blackout dates. *Id.* at 823. The *Wolens* Court recognized that the relevant inquiry, then, was whether allowing the claims to proceed amounted to state action, prohibited by the preemption provision.

Like *Wolens*, the allegations in the case *sub judice* clearly relate to the "price, route or service" of a motor carrier. The crux of Plaintiff's Complaint is that ABF breached an oral agreement by charging a higher price than it allegedly promised for the services it rendered to Mastercraft. Thus, as in *Wolens*, the relevant inquiry is whether permitting the causes of action in

Mastercraft's Complaint to proceed, applying Maryland law, amounts to this State's "enactment or enforcement of any law, regulation or other provision, having the effect of a law," prohibited by the ICCTA's preemption provision.

While acknowledging that the ADA's preemptive provision is to be construed broadly, the *Wolens* Court, citing *Morales*, stated that it did not read ADA's preemption clause, however, "to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 115 S.Ct. at 825. Further, the Court noted that the "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law within the meaning" of the preemptive provision of the ADA. *Id.* (internal citations omitted).

The Court ultimately held that the ADA preempted the Plaintiffs' Consumer Protection Act ("CPA") claim because the CPA serves as a means to "guide and police the marketing practices of the airlines." *Id.* at 823. The Court held, however, that permitting a breach of contract claim simply provides a remedy that is confined to a contract's terms, and simply holds parties to their agreements, and, thus, does not amount to state action and enforcement.

Although there is a dearth of case law examining this issue under the ICCTA, in *Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F.Supp. 665 (N.D.Ga.1997), the United States District Court for the Northern District of Georgia examined the ICCTA's preemptive effect on state law claims for breach of contract, fraud and unjust enrichment. The court specifically scrutinized *Wolens*, and adopted the holding in *Wolens* that routine breach of contract claims are not preempted by the ICCTA. *Id.* at 672.

To determine whether Plaintiff's tort law claims were preempted by the ICCTA, the District Court for the Northern District of Georgia also examined the applicable case law concerning the preemption of tort claims under the ADA. The court noted that the Circuit Courts applying *Morales* and *Wolens* had construed the ADA's preemption provision broadly, and, for the most part, had "preempted state law tort actions where the subject matter of the action related to the price, route, or service of an airline." *Id.* at 671. Consequently, the district court held that a "state law tort action against a carrier, where the subject matter of the action is related to the carrier's prices, routes or services, is a state enforcement action having a connection with or reference to a price, route, or service of any motor carrier..." and is, thus, preempted by the ICCTA. *Id.* at 672.

The *Deerskin Trading Post* court ultimately dismissed all of Plaintiff's state law tort claims, even though they all were derived from the defendant's conduct in breaching the contract. The district court noted, "courts are permitted to hold the parties to the contract 'to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.'" *Id.* at 673 (quoting *Wolens*, 513 U.S. at 223, 115 S.Ct. 817).[1]

---

1. The *Deerskin Trading Post* court discussed the inherent inconsistency in holding the tort claims preempted, while the contract based action was not, when the claims derived from the exact conduct. The court noted that "allowing Plaintiff to bring tort claims based on contractual obligations would create a state enforced right to a specific price or pricing practice, as opposed to a privately ordered

### C. Plaintiff's Tort Claims of Misrepresentation, Negligent Misrepresentation and Unjust Enrichment Are Preempted by the ICCTA

In this case, Plaintiff alleges that an agent of the Defendant orally agreed to a price for its service, but later charged it more than the allegedly agreed upon price. The legislative history of the ICCTA reflects a specific intent of Congress to mandate that federal law governs interstate shipping prices. However, decisions of the United States Supreme Court and other courts addressing similar cases indicate a distinction between a contractual claim and a tort claim.

The Supreme Court's opinion in *Wolens* reflects the Court's recognition that basic contractual claims and disputes between the parties are not meant to be channeled into federal courts. 513 U.S. at 232, 115 S.Ct. 817. Under the existing case law, this Court may enforce the bargain of the parties, by permitting the breach of contract action, but may not enlarge or enhance the bargain, *vis a vis* a tort action. As the United States District Court of the Northern District of Georgia noted in *Deerskin Trading Post*, "a state law tort action against a carrier, where the subject matter of the action is related to the carrier's prices, routes, or services, is a state enforcement action . . . ." 972 F.Supp. at 672. Claims of misrepresentation, negligent misrepresentation, and unjust en-

richment[2] are tort actions reflecting "state-imposed obligations external to a contract." *Id.* at 673.

With respect to the Plaintiff's breach of contract claim, the Plaintiff seeks to enforce a contractual right as allegedly agreed upon between the parties. The subject matter of the other three claims—misrepresentation, negligent misrepresentation, and unjust enrichment—seek to impose additional state law standards, which may vary from state to state. It is exactly this type of variance which Congress seeks to preclude by means of the preemption provisions of the ICCTA. Thus, Plaintiff's state law claims of misrepresentation, negligent misrepresentation and unjust enrichment must be dismissed, as they are preempted by the ICCTA.[3]

### D. Defendant's Motion With Respect to The Timeliness of Plaintiff's Contractual Claim Must Await Discovery

Defendant lastly contends that if any of Plaintiff's claims survive, Plaintiff may dispute only the shipments made in the 180 days prior to filing its complaint, arguing that the 180–day dispute period, outlined in 49 U.S.C. § 13710(a)(3)(B), governs this case. To determine such issues, the Court must look outside the pleadings and, thus, must convert this portion of the Motion to Dismiss into a Motion for Summary Judgment. *See* Fed. R. Civ. Pro.

---

agreement to a specific price or pricing practice." *Id.* at 673.

2. Unjust enrichment is quasi-contractual and is a form of restitution. It is well-settled law in Maryland that a claim for unjust enrichment may not be brought where the subject matter of the claim is governed by an express contract. *See NRT Mid–Atlantic, Inc. v. Innovative Properties, Inc.*, 144 Md.App. 263, 286, 797 A.2d 824 (2002); *FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (D.Md. 1998). Thus, if this Court were to entertain

Plaintiff's unjust enrichment claim, it would be forced to do more that simply "hold the parties to the contract 'to the parties' bargain,' " *Deerskin Trading Post*, 972 F.Supp. at 673, and, thus, such claim is preempted.

3. Defendant also seeks the dismissal of claims for punitive damages. A plaintiff cannot recover punitive damages for breach of contract, and, thus, such request is mooted by the Court's dismissal of all of Plaintiff's tort claims.

12(b). However, discovery has not yet commenced in this case.

Plaintiff's response, while not accompanied by a Rule 56(f) affidavit, indicates that Mastercraft must be "afforded the opportunity to take discovery in order to effectively oppose the motion." Pl.'s Mem. Opp. at 2. Although an affidavit showing a need for discovery is preferred, the Court believes that the benefit of discovery would greatly enlighten the issues in this case and finds a summary judgment determination premature.

The Fourth Circuit has specifically held that Rule 56(f) affidavits are not always necessary. *See Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244–45 (4th Cir.2002). In accord with this principle, this Court has previously held that if the nonmoving party makes objections that satisfy the purpose of the affidavit and is not lax in pursuing discovery, he or she may not need to file a Rule 56(f) affidavit. *Chernova v. Electronic Systems Services,* 247 F.Supp.2d 720, 722–23 (D.Md.2003). Judge Motz of this Court noted that "[t]he purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of the party's opposition." *Id.* at 723 (quoting *Harrods,* 302 F.3d at 244). It is clear that the Plaintiff opposes the motion in good faith, and, that, without the benefit of discovery, this Court cannot assess the merits of the Plaintiff's opposition. Thus, the purpose of Rule 56(f) is satisfied, rendering the affidavit unnecessary.

## CONCLUSION

This Court finds that all of Plaintiff's claims, except its breach of contract claim, are preempted by the ICCTA and, therefore, must be dismissed. The application of the 180–day rule set forth in the ICCTA requires consideration of exhibits outside the pleadings and, thus, must be treated as a Motion for Summary Judgment. As the case requires the benefit of discovery for determination of such issue, the Court will stay ABF's Motion for Summary Judgment pending the close of discovery.

Accordingly, by separate Order, Defendant's Motion to Dismiss will be GRANTED in part and DENIED in part. Accordingly, Counts II, III, and IV of Plaintiff's Complaint will be DISMISSED. To the extent that Defendant's Motion with respect to the contractual claim in Count I is deemed a Motion for Summary Judgment, it shall be STAYED pending the completion of discovery. Defendant shall ANSWER the amended complaint within the time accorded by the Federal Rules of Civil Procedure.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion of even date, it is this 17th day of September, 2003, by the Court, ORDERED:

1. That the Defendant's Motion to Dismiss BE, and it is hereby, GRANTED in part, and DENIED in part;

2. That Counts II, III, and IV of Plaintiff's Complaint BE, and they are hereby, DISMISSED WITH PREJUDICE; and

3. That Defendant's Motion to Dismiss, construed as a Motion for Summary Judgment as to Count I BE, and it is hereby, STAYED pending the completion of discovery.