

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

April 26, 2004

The Honorable Burt R. Solomons
Chair, Committee on Financial
    Institutions
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0183

Re: Whether 49 U.S.C. § 14501(c)(1) preempts chapter 145 of the Texas Civil Practice and Remedies Code (RQ-0123-GA)

Dear Representative Solomons:

You ask whether 49 U.S.C. § 14501(c)(1), which prohibits states from regulating motor carriers of property, preempts chapter 145 of the Texas Civil Practice and Remedies Code, which provides a residential delivery or in-home service company that has obtained an employee criminal history background check with a "presumption of no negligence" in certain actions.[1]

## I. Background

### A. Civil Practice and Remedies Code, Chapter 145

Chapter 145, which the Seventy-eighth Legislature enacted in the 2003 regular session, pertains to in-home service companies and residential delivery companies that obtain criminal history background checks for certain employees whose job duties require entry into homes. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 145.001-.004 (Vernon Supp. 2004). Your query focuses on residential delivery companies, which may also be regulated by federal law governing motor carriers. Thus, we limit our discussion to residential delivery companies.

Under chapter 145, the term "residential delivery company" means "a person who employs a person to, for a fee: (A) deliver an item to another person's residence; and (B) enter the residence to place, assemble, or install the item." *Id.* § 145.001(2). Section 145.002 provides that a residential delivery company

---

[1]*See* Letter from Honorable Burt R. Solomons, Chair, Committee on Financial Institutions, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General (Sept. 30, 2003) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us.) [hereinafter Request Letter].

> shall obtain from the Department of Public Safety or a private vendor approved by the department and offering services comparable to the services offered by the department all criminal history record information relating to an officer, employee, or prospective employee of the company whose job duties require or will require entry into another person's residence.

*Id.* § 145.002.

Chapter 145 does not impose sanctions against a company that fails to obtain a criminal history background check for an employee. Rather, it provides a company that has performed a check as required by section 145.002 with a rebuttable "presumption of no negligence" in an action for damages brought against the company for negligent hiring. *See id.* § 145.003(b) ("In an action to which this section applies, an in-home service company or residential delivery company is rebuttably presumed to have not acted negligently if [the company obtained criminal history record information for the employee and the records meet certain criteria.]"). The presumption applies in an action that:

> (1) arises out of a criminal act or omission by an officer or employee of the company as to whom the company is required to obtain criminal history record information under Section 145.002;
>
> (2) is brought by or on behalf of a person whose home the officer or employee entered while in the performance of the employee's job duties, without regard to where the criminal act or omission occurred; and
>
> (3) seeks damages from the company for the negligent hiring of the officer or employee.

*Id.* § 145.003(a). The chapter also provides a rebuttable "presumption of no negligence" for a person who contracts with a company to deliver an item, *i.e.,* a person who hires a residential company as a subcontractor, if the company has complied with the requirement or if the person requested in writing that the company comply.[2] The legislative history indicates that chapter 145's purpose is to provide an incentive for residential delivery and in-home service companies to perform employee

---

[2]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 145.004 (Vernon Supp. 2004) (providing a rebuttable presumption for a person who contracts with a residential delivery company or an in-home service company "if: (1) the residential delivery company or in-home service company is in compliance with Section 145.003(b); or (2) the person who contracts with the residential delivery company or in-home service company requests that the company obtain a criminal history background check described by Section 145.002 on any employee of the company being sent to deliver, place, assemble, repair, or install an item and the person's request is in writing and is delivered to the company prior to the company's employee being sent").

criminal history background checks.[3]

### B.    Regulatory Scheme for Transportation of Property by Motor Carriers

Your questions pertain to the federal-state scheme regulating transportation of property, particularly household goods. Title 49 of the United States Code generally governs interstate and international transportation of passengers and property, *see* 49 U.S.C. § 13501 (2000) (granting the federal Surface Transportation Board jurisdiction over transportation between a place in a state and in another state or country), including household goods, *see id.* § 14104 (authorizing the federal Department of Transportation to issue regulations protecting individual shippers who transport household goods by motor carriers subject to federal jurisdiction). For example, the Carmack Amendment, *see id.* § 14706, limits the liability of interstate carriers for loss or damage to goods shipped in interstate commerce, including household goods, and preempts state-law remedies. Another federal statute requires interstate household goods carriers to offer shippers arbitration as a means of settling disputes concerning damage or loss to household goods. *See id.* § 14708. And the Federal Motor Carrier Safety Administration has promulgated rules governing interstate motor carriers of household goods to protect individual shippers. *See* 49 C.F.R. pt. 375 (2003); *see also id.* § 375.101 ("[A] for-hire motor carrier engaged in the interstate transportation of household goods, must follow these regulations when offering . . . services to individual shippers, . . . only when . . . transport[ing] household goods for individual shippers by motor vehicle in interstate commerce.").

Historically, while the federal government regulated interstate transportation of property, the states regulated intrastate transportation of property. In 1994, however, Congress deregulated intrastate transportation of property by motor carriers in an effort to level the playing field between air carriers, which were not subject to state regulation, and motor carriers, which were.[4] The federal statute at the heart of your request was enacted as part of that 1994 deregulation effort as 49 U.S.C.

---

[3]*See* SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 705, 78th Leg., R.S. (2003) (bill analysis for Senate Committee Report) ("Currently, there is no incentive in [the] statute for 'in-home service' or 'residential delivery' companies to perform background checks on their employees. H.B. 705 creates a rebuttable presumption on any criminal act committed by an employee that the company did not act negligently if it performed a criminal background check on the employee with a clear result."); *see also* HOUSE COMM. ON CIVIL PRACTICES, BILL ANALYSIS, Tex. Comm. Substitute H.B. 705, 78th Leg., R.S. (2003) (bill analysis for House Committee Report).

[4]*See* Federal Aviation Administration Authorization Act of 1994, H.R. CONF. REP. NO. 103-677 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1754.

§ 11501[5] and reenacted in 1995 as 49 U.S.C. § 14501.[6] Modeled on 49 U.S.C. § 41713,[7] the Airline Deregulation Act of 1978,[8] which limits state authority over air carriers, section 14501 prohibits states from enacting or enforcing a law or regulation related to the price, route, or service of a motor carrier, freight forwarder, or broker. *See* 49 U.S.C. § 14501(b)-(c) (2000).

The provision you ask about, 49 U.S.C. § 14501(c)(1), articulates the general rule that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property," except as provided in paragraphs (2) and (3). *Id.* § 14501(c)(1). Paragraph (2) provides that the general rule prohibiting state regulation of transportation by motor carriers of property "does not apply to the transportation of household goods." *Id.* § 14501(c)(2)(B).[9]

For purposes of title 49, section 13102(10) defines the term "household goods" to mean

> personal effects and property used or to be used in a dwelling, when a part of the equipment or supply of such dwelling, and similar property if the transportation of such effects or property is --
>
> (A) arranged and paid for by the householder, except such term does not include property moving from a factory or store, other than property that the householder has purchased with the intent to use in his or her dwelling and is transported at the request of, and the transportation charges are paid to the carrier by, the householder; or
>
> (B) arranged and paid for by another party.

---

[5]*See* Federal Aviation Administration Authorization Act of 1994, Pub. L. No. 103-305, 108 Stat. 1569 (1994) (adding 49 U.S.C. § 11501).

[6]*See* Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803; *see also* Interstate Commerce Commission Termination Act of 1995, H.R. CONF. REP. NO. 104-422 (1995), *reprinted in* 1995 U.S.C.C.A.N. 793.

[7]*See* Federal Aviation Administration Authorization Act of 1994, H.R. CONF. REP. NO. 103-677 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1757.

[8]*See* Airline Deregulation Act of 1978, Pub. L. No. 95-504 § 105, 92 Stat. 1705 (now codified at 49 U.S.C. § 41713).

[9]Paragraph (2) also provides that the general prohibition shall not restrict "safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. § 14501(c)(2)(A) (2000); state size, weight, or hazardous cargo route restrictions, *see id.*; or state motor carrier financial responsibility and insurance requirements, *see id.* Subsection (c)(2)(C) provides that the general prohibition does not apply to the authority of a state or political subdivision to regulate nonconsent towing by tow trucks. *See id.* § 14501(c)(2)(C).

*Id.* § 13102(10).[10] In other words, the term "household goods" generally includes "personal effects and property used or to be used in a dwelling." *See id.* Property moving from a factory or store does not constitute "household goods" unless the householder has purchased it "with the intent to use in his or her dwelling and [it] is transported at the request of, and the transportation charges are paid to the carrier by, the householder." *Id.* § 13102(10)(A). In addition, for purposes of federal law, the term "transportation" includes not just the actual movement of property from one location to another. *See id.* § 13102(21)(A). It also embraces "services related to . . . movement [of property], including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *Id.* § 13102(21)(B).

Consistently with federal law, chapter 643 of the Texas Transportation Code, the state law governing motor carriers, does not apply to "a motor vehicle registered under the single state registration system established under [federal law] when operating exclusively in interstate or international commerce." TEX. TRANSP. CODE ANN. § 643.002(1) (Vernon 1999). The Transportation Code now expressly limits the Texas Department of Transportation's (TxDOT) authority over "prices, routes, or services provided by a motor carrier." *Id.* § 643.151. Section 643.153 provides TxDOT with authority over a motor carrier transporting household goods, as defined by 49 U.S.C. § 13102, including the authority to adopt consumer protection rules. *See id.* § 643.153 (Vernon Supp. 2004); *see also id.* § 643.001(4) ("'Household goods' has the meaning assigned by 49 U.S.C. Section 13102.").[11]

### C.     Federal Preemption

You ask, in essence, whether federal law preempts chapter 145 of the Civil Practice and Remedies Code. As the Texas Supreme Court has recently noted:

> Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST., art. VI, cl. 2. Under the Supremacy Clause, if a state law conflicts with federal law, the state law is preempted and "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 576 (1981).

*Delta Airlines, Inc. v. Black*, 116 S.W.3d 745, 748 (Tex. 2003). "A federal law may preempt a state law expressly[, or it] may . . . preempt a state law impliedly, either (i) when the scheme of federal

---

[10]49 U.S.C. § 13102 defines terms for title 49, part B, which includes section 14501. *See id.* § 13102 ("In this part, the following definitions shall apply . . . .").

[11]Congress is currently considering legislation that would permit states to enforce federal consumer-protection statutes and regulations related to the transportation of household goods in interstate commerce. *See* S. 1072, 108th Cong. § 4308 (2003) WL 2003 CONG US S 1072.

regulation is sufficiently comprehensive to support a reasonable inference that Congress left no room for supplementary state regulation or (ii) if the state law actually conflicts with federal regulations." *Id.* (citation omitted). "A state law presents an actual conflict when a party cannot comply with both state and federal regulations or when the state law would obstruct Congress' purposes and objectives: 'The purpose of Congress is the ultimate touchstone' in every preemption case." *Id.* (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

When Congress adopts a statute that provides a reliable indication of congressional intent regarding preemption, the scope of federal preemption is determined by the statute. In this case, preemption of state authority over transportation of property is expressly governed by the statute that is the focus of your query, 49 U.S.C. § 14501(c).

## II.    Analysis

You ask three questions about the relationship between chapter 145 of the Civil Practice and Remedies Code and 49 U.S.C. § 14501(c):

> 1) Does the requirement of a background check affect the price, route or service of a motor carrier?
>
> 2) Does 49 U.S.C. § 14501(c) preempt the application of Chapter 145 . . . to <u>interstate</u> motor carriers, including those transporting household goods?
>
> 3) Does 49 U.S.C. § 14501(c) preempt the application of Chapter 145 . . . to <u>intrastate</u> motor carriers, including those transporting household goods?

Request Letter, *supra* note 1, at 2.

As a preliminary matter, we examine the purpose of section 14501(c)'s general prohibition and savings clauses. Congress enacted section 14501(c) to deregulate *intrastate* transportation of property.[12] As the United States Supreme Court recently noted in construing section 14501(c)(2)(A), in the 1994 statute adopting the predecessor to section 14501(c), "Congress reported its finding that 'the regulation of intrastate transportation of property by the States' unreasonably burdened free trade, interstate commerce, and American consumers. Congress therefore concluded that 'certain aspects of the State regulatory process should be preempted.'" *City of Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002) (citing Pub. L. No. 103-305, § 601(a)(1)-(a)(2), 108 Stat. 1605). However, while 49 U.S.C. § 14501(c)(1) generally preempts state laws "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property," it preserves state authority over certain matters in paragraphs (2)-(3). *Id.* at 429-30; 49 U.S.C. 14501(c)(1) (2000). It is clear from the Court's opinion that the power preserved in paragraphs (2)-(3) relates to states' authority over intrastate transportation. *See City of Columbus*, 536 U.S. at 439.

---

[12]*See supra* note 4.

The legislative history also confirms that the savings clauses are intended to preserve existing state authority over certain intrastate matters, not to give states new regulatory authority, such as the authority to regulate interstate activities. *See* Federal Aviation Administration Authorization Act of 1994, H.R. Conf. Rep. No. 103-677 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1756 ("The conferees emphasize that nothing in these new subsections contains a new grant of Federal authority to a State to regulate commerce . . . . The intention of the conferees is solely to identify certain areas that are not preempted by the preemption provision.").

Thus, section 14501(c)(1) limits state authority to regulate transportation of property generally while section 14501(c)(2)(B) preserves state authority to regulate intrastate transportation of household goods. The latter provision does not grant states new authority to regulate interstate transportation of household goods.

### A.    Does the Chapter 145 Background-Check Requirement Affect the Price, Route, or Service of a Motor Carrier?

First, you ask whether the chapter 145 background-check requirement affects a motor carrier's price, route, or service. *See* Request Letter, *supra* note 1, at 2 (question 1). In essence, you ask whether the state-law requirement is preempted by 49 U.S.C. § 14501(c)(1), which prohibits a state from enacting or enforcing "a law, regulation, or other provision having the force and effect of law *related to a price, route, or service* of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (2000) (emphasis added).

Your question assumes that at least some residential delivery companies affected by chapter 145 of the Civil Practice and Remedies Code are motor carriers within the meaning of the federal statute, which appears to be a fair assumption. *Compare id.* § 13102(12) (defining "motor carrier" to mean "a person providing motor vehicle transportation for compensation"), *with* TEX. CIV. PRAC. & REM. CODE ANN. § 145.001(2) (Vernon Supp. 2004) (defining "residential delivery company" to mean "a person who employs a person to, for a fee: (A) deliver an item to another person's residence; and (B) enter the residence to place, assemble, or install the item").

We also note that property delivery by a motor carrier is a service that may fall within the ambit of federal law. An item that may be placed, assembled, or installed in a dwelling is "property" under title 49. *See* 49 U.S.C. § 13102(10) (2000) (defining "household goods" as property to be used in a dwelling). In addition, title 49 broadly defines the term "transportation of property" to embrace "services related to . . . movement [of property], including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *Id.* § 13102(21)(B). Thus, under federal law, transportation of property includes some services provided by a motor carrier in a residence related to the property it has transported, such as placing, assembling, or installing the property.

Courts broadly construe 49 U.S.C. § 14501(c)(1). We have not located a case that addresses whether a state statute requiring motor carriers to perform employee background checks is a "law

related to a price, route, or service" of a motor carrier. With respect to state tort actions, in the case law that comes closest to addressing the issues raised by chapter 145, courts have broadly construed the phrase "related to a price, route, or service" of a motor carrier to preempt any state action against a carrier "where the subject matter of the action is related to the carrier's prices, routes, or services." *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am. Inc.*, 972 F. Supp. 665, 672 (N.D. Ga. 1997) (claims for breach of contract, statutory fraud, common-law fraud, negligence, gross negligence, unjust enrichment, and imposition of constructive trust preempted by 49 U.S.C. 14501(c)(1)); *see also Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F. Supp. 2d 284, 288 (D. Md. 2003) (concluding that 49 U.S.C. 14501(c)(1) preempted "[c]laims of misrepresentation, negligent misrepresentation, and unjust enrichment" because they "are tort actions reflecting 'state-imposed obligations external to a contract'") (citing *Deerskin Trading Post*, 972 F. Supp. at 673). In construing 49 U.S.C. § 14501(c)(1), these courts rely heavily on the United States Supreme Court's interpretation of the Airline Deregulation Act of 1978 (the "Act"),[13] which preempts any state "law, regulation, or other provision having the force and effect of law related to price, route, or service of an air carrier," 49 U.S.C. § 41713(b) (2000). *See Deerskin Trading Post*, 972 F. Supp. at 668-73; *see also Mastercraft Interiors*, 284 F. Supp. 2d at 286 ("[T]here is a dearth of case law interpreting [49 U.S.C. § 14501(c)], and, thus, case law interpreting the [Act] is particularly instructive in analyzing the issues in this case.").[14] The Court has held that "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the Act's preemption provision.]"[15] Following this precedent, the Supreme Court of Texas, reasoning that "state tort actions can be state enforcement" that "impose[s] state policies on the operation of air carriers," held that the Act preempted a plaintiff's fraud and misrepresentation claims relating to an airline's services. *See Delta Airlines*, 116 S.W.3d at 756-57.

Clearly, the chapter 145 background-check requirement relates to motor carriers' services and imposes state obligations and policies on motor carriers. *See id.*; *Mastercraft Interiors*, 284 F. Supp. 2d at 286. Accordingly, the background-check requirement is preempted (as it applies to motor carriers), as would be any attempt by a state actor to enforce it against a motor carrier. For the same reason, chapter 145 would also be preempted to the extent it could be construed to create an affirmative presumption that a motor carrier that failed to perform a criminal history background check acted negligently.

While section 14501(c)(1) clearly preempts chapter 145's background-check requirement as it applies to motor carriers, it is less clear whether section 14501(c)(1) preempts chapter 145's "presumption of no negligence." In the event a motor carrier was sued for a state cause of action that

---

[13]*See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992).

[14]*See also supra* note 7 (legislative history establishing that predecessor to section 14501(c) modeled on the Act).

[15]*Morales*, 504 U.S. at 384 (citation omitted).

was not preempted by section 14501(c)(1)[16] or other federal law,[17] and the plaintiff established that the motor carrier owed the plaintiff a duty to perform a criminal history check,[18] the presumption would work to the advantage of a carrier that performed a background check consistent with the

---

[16]You do not ask and we do not resolve whether section 14501(c)(1) would preempt a state-law cause of action against a motor carrier for negligent hiring. Although cases addressing section 14501(c)(1) generally conclude that it preempts state tort actions, *see, e.g., Mastercraft Interiors*, 284 F. Supp. 2d at 288 (49 U.S.C. § 14501(c)(1) preempts claims of misrepresentation, negligent misrepresentation, and unjust enrichment); *Deerskin Trading Post*, 972 F. Supp. at 673 (49 U.S.C. § 14501(c)(1) preempts claims for negligence and gross negligence); *Rockwell v. United Parcel Serv., Inc.*, No. 2:99 CV 57, 1999 WL 33100089, at **1-2 (D.Vt. July 6, 1999) (49 U.S.C. § 14501(c)(1) preempts state personal injury and wrongful death claims), cases addressing the Act suggest that in some instances 49 U.S.C. § 41713 does not preempt state tort actions for personal injuries against airlines, *see, e.g., Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir. 1998) (concluding that 49 U.S.C. § 41713 did not preempt state tort claims for personal injuries because Congress "did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct"); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 340 (5th Cir. 1995) (holding that 49 U.S.C. § 41713 did not preempt state-law claim for damages against airline based on airline's alleged negligence in allowing storage in overhead compartment of case of rum that fell on plaintiff and cut her arm and wrist); *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 279 (Tex. 1996) (holding that 49 U.S.C. § 41713 did not preempt common-law negligence claims against air carriers for personal injuries sustained during flights). *See also infra* note 17.

[17]When a shipper sues a carrier for loss or damages to goods in an interstate move under a valid bill of lading, the Carmack Amendment, 49 U.S.C. § 14706, generally preempts state-law claims, including tort claims. *See D.M. Diamond Corp. v. Dunbar Armored, Inc.*, 124 S.W.3d 655, 661 (Tex. App.–Houston [14th Dist.] 2003, no pet.) ("State law claims that are preempted by the Carmack [Amendment] include the tort of outrage, intentional and negligent infliction of emotional distress, breach of contract, breach of implied warranty, breach of express warranty, violation of the Texas [Deceptive Trade Practice Act], slander, misrepresentation, fraud, negligence and gross negligence."). Whether the Carmack Amendment preempts state-law claims for negligence arising from injuries to individuals separate from loss or damage to property in connection with interstate movement of property, such as injuries arising from an assault by a carrier's employee, appears to be an unresolved question. Several courts have suggested in dicta that federal law would not preempt such an action. *See Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997) ("[L]iability arising from separate harms--apart from the loss or damage of goods--is not preempted. For example, if an employee of the carrier assaulted and injured the shipper, state law remedies would not be preempted."); *see also Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 382 (5th Cir. 1998) ("the Carmack Amendment preempts any common law remedy that increases the carrier's liability beyond 'the actual loss or injury to the property,' unless the shipper alleges injuries separate and apart from those resulting directly from the loss of shipped property") (citing *Rini*, 104 F.3d at 506-07); *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289-90 (7th Cir. 1997) ("the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce") (citing *Rini*, 104 F.3d at 506); *Richter v. N. Am. Van Lines, Inc.*, 110 F. Supp. 2d 406, 411 (D. Md. 2000) ("Another non-preempted state cause of action would arise where an employee of the carrier assaults and injures the shipper.") (citing *Rini*, 104 F.3d at 506); *cf. Rehm v. Baltimore Storage Co.*, 300 F. Supp. 2d 408, 415 (W.D. Va. 2004) (shipper's state-law claim to recover for damage to real property not preempted by the Carmack Amendment). On the other hand, the only case directly addressing the issue reached the opposite conclusion. *See United Van Lines v. Shooster*, 860 F. Supp. 826, 829-30 (S.D. Fla. 1992) (holding that state-law claims arising from alleged assault and battery, committed on shippers by representatives of carrier, were preempted by the Carmack Amendment).

[18]*See, e.g., Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 733, 736 (Tex. 1998) (holding that manufacturer owed legal duty to customer who was raped by door-to-door vacuum cleaner salesman employed by distributor because manufacturer retained control over details of distributor's work); *Wheaton Van Lines, Inc. v. Mason*, 925 S.W.2d 722, 730 (Tex. Civ. App.–Fort Worth 1996, writ denied) (holding that facts did not establish that interstate moving company owed duty to plaintiff who sued interstate moving company in connection with assault committed by local booking agent's employee in a local move).

chapter 145 requirement. In a case in which a motor carrier asserts the presumption based on a background check that the carrier performed voluntarily, a court could conclude that the presumption is not preempted by section 14501(c)(1) because it does not impose state obligations or policies on motor carriers and it primarily relates to the burden of proof in the civil action as opposed to the carrier's services.

In the event a court were to conclude that the presumption is not preempted, whether the presumption is severable from the background-check requirement would be a question of state law. *See Exxon Corp. v. Hunt*, 475 U.S. 355, 376 (1986) ("We leave to the New Jersey Supreme Court the state-law question whether, or to what extent, the nonpre-empted provisions of the statute are severable from the pre-empted provisions.").[19] Because the statute that enacted chapter 145 did not contain a provision governing its severability,[20] severability will depend on whether the presumption, which is established in section 145.003, may be given effect without the mandatory background-check requirement set forth in section 145.002. *See* TEX. GOV'T CODE ANN. § 311.032(c) (Vernon 1998) ("In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable."). A court could determine that the section 145.003 presumption can be given effect without the section 145.002 background-check requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 145.002 (Vernon Supp. 2004) (requiring a company to "obtain from the Department of Public Safety or a private vendor approved by the department and offering services comparable to the services offered by the department all criminal history record information relating to an officer, employee, or prospective employee of the company whose job duties require or will require entry into another person's residence"), .003 (establishing actions against in-home service and residential delivery companies in which presumption applies).

## B.    Does 49 U.S.C. § 14501(c) Preempt Chapter 145 with Respect to *Intrastate* Motor Carriers, Including Those Transporting Household Goods?

You also ask whether "49 U.S.C. § 14501(c) preempt[s] chapter 145 with respect to <u>intrastate</u> motor carriers, including those transporting household goods." *See* Request Letter, *supra* note 1, at 2 (question 3).[21] In essence, you ask us to address the scope of 49 U.S.C. § 14501(c)(2)(B), the household goods exception to section 14501(c)(1).

---

[19]*See also Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) ("Severability is of course a matter of state law."); *Tex. Pharmacy Ass'n v. Prudential Ins. Co. of Am.*, 105 F.3d 1035, 1039 (5th Cir. 1997) ("Whether portions of a state statute found to contravene federal law are severable is a question of state law.").

[20]*See* Act of May 30, 2003, 78th Leg., R.S., ch. 228, 2003 Tex. Gen. Laws 1053.

[21]Because 49 U.S.C. § 14501(c)(2)(B), the household-goods savings clause, pertains to state authority over intrastate as opposed to interstate activities, we address your third question, which relates to intrastate activities, before your second, which relates to interstate activities. *See* Request Letter, *supra* note 1, at 2 (questions 2 and 3).

Section 14501(c)(2)(B) preserves the authority of the State of Texas to regulate the intrastate "transportation of household goods." 49 U.S.C. § 14501(c)(2)(B) (2000). Thus, we consider the extent to which chapter 145 pertains to the transportation of household goods within the meaning of federal law.

Again, the Texas statute applies to a "residential delivery company," a company that employs a person to deliver an item to a residence, which the employee enters to place, assemble, or install the item. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 145.001(2) (Vernon Supp. 2004). Although chapter 145 does not define the term "item," the term refers to property that may be placed, assembled, or installed in a home, *see id.*, and therefore such items are "household goods" as defined in 49 U.S.C. § 13102(10). Because delivering and placing, assembling, or installing such goods falls within the federal definition of "transportation," *see* 49 U.S.C. § 13102(21) (2000), such a company engages in "transportation" within the meaning of title 49.

We have located only two cases applying 49 U.S.C. § 14501(c)(2)(B), both of which construe the term "household goods" narrowly. *See United Parcel Serv., Inc. v. Flores-Galarza*, 275 F. Supp. 2d 155, 160-61 (D.P.R. 2003) (holding that 49 U.S.C. §§ 13102, 14501(c)(2)(B) did not permit Commonwealth of Puerto Rico to impose excise tax on household goods deliveries by carrier that did not perform specialized services); *A.A. Metcalf Moving & Storage Co., Inc. v. N. St. Paul-Maplewood-Oakdale Schs.*, 587 N.W.2d 311, 317-19 (Minn. Ct. App. 1998) (holding that 49 U.S.C. §§ 13102, 14501(c) preempted state tariff rate schedules applicable to move of school property, which did not fall within federal definition of household goods). Based on the legislative history, a federal district court has held that the term is intended only to "refer to the carriage of goods by carriers that perform 'a specialized service requiring skilled workmen,' including 'the proper placing of furniture . . . , the laying of rugs, hanging of pictures, and other services in connection with the removal of furniture or fixtures from one location to another.'" *United Parcel Serv.*, 275 F. Supp. 2d at 160 (citation omitted). Even using this very narrow definition, however, the items referred to in chapter 145, which are placed, assembled, or installed in homes, are household goods for purposes of 49 U.S.C. § 14501(c)(2)(B).

In sum, section 14501(c)(2)(B) expressly preserves state authority to regulate intrastate transportation of household goods, and chapter 145 of the Civil Practice and Remedies Code applies to transportation of household goods within the meaning of that provision. Therefore, to the extent chapter 145 is preempted by section 14501(c)(1), section 14501(c)(2)(B) saves chapter 145 from preemption with respect to residential delivery companies' intrastate activities. We note, however, that section 14501(c)(2)(B) does not preserve state authority with respect to the transportation of items that are not household goods. In particular, section 13102, which defines household goods for section 14501, excludes "property moving from a factory or store, other than property that the householder has purchased with the intent to use in his or her dwelling and is transported at the request of, and the transportation charges are paid to the carrier by, the householder." 49 U.S.C. § 13102(10)(A) (2000).

C.    **Does 49 U.S.C. § 14501(c) Preempt Chapter 145 with Respect to *Interstate* Motor Carriers, Including Those Transporting Household Goods?**

Finally, you ask whether 49 U.S.C. § 14501(c) preempts chapter 145 with respect to interstate motor carriers transporting household goods. *See* Request Letter, *supra* note 1, at 2 (question 2). As we have discussed, 49 U.S.C. § 14501(c) was enacted to deregulate intrastate transportation of property, and 49 U.S.C. § 14501(c)(2)(B) merely preserves state authority over the intrastate transportation of household goods. Section 14501(c)(2)(B) does not preserve state authority over interstate motor carriers transporting household goods and does not save the chapter 145 background-check requirement to the extent it applies to such carriers. In the event a plaintiff were to succeed in bringing a state-law claim for negligent hiring against an interstate motor carrier that is not preempted by federal law, however, a court might apply the chapter 145 "presumption of no negligence." *See supra* part II.A., pp. 8-10.

## S U M M A R Y

The employee background-check requirement established by section 145.002 of the Texas Civil Practice and Remedies Code is preempted by 49 U.S.C. § 14501(c)(1) to the extent the state-law requirement applies to motor carriers regulated by federal law. The background-check requirement is not preempted to the extent it applies to motor carriers' intrastate transportation of household goods. *See* 49 U.S.C. §§ 13102(10) (2000) (defining "household goods"), 14501(c)(2)(B) (preserving state authority over motor carriers' transportation of household goods). Although interstate transportation of property, including household goods, is generally governed by federal law, the chapter 145 "presumption of no negligence" might apply in a state-law tort action against a motor carrier that is not preempted by federal law.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee